# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

WILLIAM ADAM, Individually and on behalf of all others similarly situated,

       Plaintiff,

vs.

CHW GROUP, INC., d/b/a Choice Home Warranty,

       Defendant.

No. 21-CV-19-LRR

**ORDER**

———————————

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . .2

III.  SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . .2

IV.  RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . 3

V.    CLASS ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      A.   Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      B.   Direct TCPA Liability Claim. . . . . . . . . . . . . . . . . . . . . . . . . 7
           1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           3.   Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
      C.   TCPA DNC Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
           1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . . . .11
           2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
           3.   Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
      D.   Class Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . . . .17
           2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

    3.    Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
    E.    Remaining Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
VII.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

## *I.   INTRODUCTION*

The matter before the court is Defendant CHW Group, Inc.'s ("CHW") "Motion to Dismiss Plaintiff's First Amended Complaint or, In the Alternative, to Strike Plaintiff's Class Allegations" ("Motion") (docket no. 25).

## *II.   RELEVANT PROCEDURAL HISTORY*

On February 18, 2021, Plaintiff William Adam filed a Complaint (docket no. 1) against CHW.  On May 21, 2021, CHW filed a "Motion to Dismiss Plaintiff's Complaint" (docket no. 17).  On June 3, 2021, Adam timely filed the First Amended Complaint (docket no. 21), alleging violations of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a) on behalf of Adam and the "No Consent/Revocation Class Pre-Recorded" (Count I); violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) on behalf of Adam and the "Internal Do[-]Not[-]Call Class" (Count II); and violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) on behalf of Adam and the "Do[-]Not[-]Call Registry Class" (Count III).  *See generally* First Amended Complaint ¶¶ 44-69.  On June 8, 2021, the court denied CHW's May 21, 2021 "Motion to Dismiss Plaintiff's Complaint" as moot.  *See* June 8, 2021 Order (docket no. 23) at 1.

On June 17, 2021, CHW filed the Motion.  On July 1, 2021, Adam filed the Resistance (docket no. 28).  On July 8, 2021, CHW filed the Reply (docket no. 29). The matter is fully submitted and ready for decision.

## *III.   SUBJECT MATTER JURISDICTION*

"Federal courts are courts of limited jurisdiction.  The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the

2

judicial power of the United States and is inflexible and without exception." *Kessler v. Nat'l Enter., Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (quoting *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998)). Even if the parties do not dispute the existence of subject-matter jurisdiction, a court may not preside over a case without it. *See Crawford v. F. Hoffman La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction.").

Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id*. Here, Adam's claims all arise under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Accordingly, the court has federal-question jurisdiction over Adam's TCPA claims.

## IV. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of Adam, the relevant facts are as follows:

On November 16, 2020, February 9, 2021, February 10, 2021 and February 11, 2021, CHW "caused . . . automated marketing text messages to be transmitted to [Adam's] cellular telephone number ending in 5310 [(the "5310 Number")]." First Amended Complaint ¶ 10. For example, the November 16, 2020 text message stated: "Hey, it's Jen at Choice Home Warranty! When can we go over your custom quote, Will? The 1st month is free. Send "No" to be removed." *Id*. Adam responded "No." *Id*. After requesting to be removed, between February 9, 2021 and February 11, 2021, Adam received six more text messages inquiring about his interest in a home warranty. *Id*.

On February 10, 2021, at the 5130 Number, Adam received a pre-recorded message from CHW. *Id*. ¶ 11. The pre-recorded message came from phone number 907-531-6456. *Id*. The pre-recorded message stated that "[CHW] was calling to offer

3

[Adam] a quote." *Id*. ¶ 12.  On February 12, 2021, at the 5130 Number, Adam received another pre-recorded message from 907-531-6456.  *Id*. ¶ 13.  The pre-recorded message stated: "We have a quote for home coverage for you.  A home warranty can protect you from unexpected expenses.  Press 1 to speak to me for more information on this offer[. I]f you received this call in error press 3." *Id*. ¶ 14.  Upon calling 907-531-6456, the following pre-recorded message is played:

> Hi, you've reached Choice Home Warranty.  Thanks for calling back.  If you're no longer interested in a home warranty press 3.  Press 1 to go over your custom home warranty quote now.  Press 2 if you'd rather schedule a time for us to call you later.  Press 9 to opt out.

*Id*. ¶ 15.

At the time Adam received CHW's calls, he was "the subscriber and sole user of the 5310 Number." *Id*. ¶ 16.  CHW's text messages and pre-recorded message calls are forms of telemarketing, advertising and/or solicitation. *Id*. ¶ 17.  "At no point in time did [Adam] provide [CHW] with his express written consent to be contacted by telemarketing calls using text messages or by telemarketing calls using pre[-]recorded or artificial messages." *Id*. ¶ 18.  "In fact, [Adam] asked [CHW] to remove himself from [CHW's] call list and stop contacting him on November 16, 2020." *Id*. ¶ 19.  However, CHW "failed to honor or abide by [Adam's] opt-out requests and continued to repeatedly call [Adam] after he asked for the messages to stop." *Id*. ¶ 21.  CHW's failure to abide by Adam's opt-out requests is indicative of: (1) CHW's lack of a written policy for maintaining internal do-not-call procedures; (2) CHW's failure to institute procedures for maintaining a list of persons who request not to receive telemarketing calls; (3) CHW's failure to maintain an internal do-not-call ("DNC") list, as well as inform and train its personnel engaged in telemarketing in the existence and the use of any internal DNC list; and (4) demonstrates that CHW does not record opt-out requests or place subscribers' names and telephone number[s] on any DNC list at the time the requests are made. *Id*.

4

¶¶ 22-25.  In 2004, Adam registered the 5310 Number on the National DNC Registry. *Id*. ¶ 26.  At all times relevant to this action, the 5130 Number has been a residential phone number and has been for personal and not business use.  *Id*. ¶¶ 27-28.

"Upon information and belief, [CHW] caused similar text messages and pre[-]recorded messages to be sent to individuals residing within this judicial district." *Id*. ¶ 29.  CHW has violated Adam's legal and substantive rights under the TCPA.  *Id*. ¶ 30.  CHW's "unsolicited pre[-]recorded messages and text messages caused [Adam] harm, including invasion of privacy, aggravation, inconvenience, wasted time, disruption to his daily life, and annoyance."  *Id*. ¶ 31.

## V.  *CLASS ALLEGATIONS*

Pursuant to Federal Rule of Civil Procedure 23, Adam brings this case as a class action on behalf of himself and others similarly situated.  *Id*. ¶ 32.  Adam brings this case on behalf of three defined classes:

> **NO CONSENT/REVOCATION CLASS PRE[-]RECORDED**: All persons in the United States who, within four years prior to the filing of this action, (1) Defendant, (2) placed a call using a pre[-]recorded or artificial voice message, (3) where the purpose of the call was to encourage the purchase or rental of, or investment in, Defendant's property, goods, or services, and (4) for which Defendant failed to secure the called party's express written consent and/or after the called party requested to not receive[] future calls from Defendant.

> **INTERNAL DO NOT CALL CLASS**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) Defendant, (2) sent a text message or pre[-]recorded message, (3) regarding Defendant's goods, products or services, (4) to said person's residential telephone number, [and] (5) after making a request to Defendant to not receive future pre[-]recorded messages or text messages.

> **DO NOT CALL CLASS**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) Defendant, (2) transmitted a call, pre[-]recorded call, or text message, (3) more than

5

one time within any 12-month period, (4) to a person who's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (5) where the purpose of the call or text messages was [] encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services.

*Id*. ¶ 33.   Adam alleges that, "[u]pon information and belief, [CHW] has placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent and/or violation of the national DNC."   *Id*. ¶ 36. "The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery.   Identification of the Class members is a matter capable of ministerial determination from [CHW's] call records."   *Id*. ¶ 37.

Adam alleges the following common questions of law and fact: (1) Whether CHW made non-emergency calls to Adam's and the Class members' telephones using pre-recorded messages; (2) whether CHW can meet its burden of showing that it obtained prior express written consent to make such calls; (3) whether CHW's conduct was knowing and willful; (4) whether CHW initiated telemarketing calls to telephone numbers listed on the National DNC Registry; (5) whether CHW initiated telemarketing calls to telephone numbers who requested to not receive such calls; (6) whether CHW is liable for damages, and the amount of such damages; and (7) whether CHW should be enjoined from such conduct in the future.   *Id*. ¶ 38.

## VI.   ANALYSIS

### A.   Standard of Review

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all factual allegations in the complaint as true.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

6

factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhusrt v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## B. Direct TCPA Liability Claim

### 1. Parties' arguments

CHW argues that Adam has "failed to plead facts supporting direct . . . TCPA liability." CHW's Brief in Support of Resistance ("CHW's Brief") (docket no. 25-1) at 17. CHW maintains that "federal courts have routinely dismissed conclusory direct TCPA liability claims that, like [Adam's], lack sufficient factual allegations demonstrating that the defendant actually "initiated" the phone calls or texts at issue in

7

the sense of "tak[ing] the steps necessary to physically place" a call or send a text message." *Id*. (quoting, *Sheski v. Shopify (USA), Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *2-*3 (N.D. Cal. May 13, 2020)). CHW maintains that the First Amended Complaint "does not allege that CHW itself actually 'physically' sent the text messages or placed the calls at issue" and only vaguely alleges that CHW "initiated and directed, or caused to be initiated and directed" text messages to Adam's telephone number.[1] *See id*. at 18-19.

In resistance to the Motion, Adam asserts that "the First Amended Complaint sufficiently alleges direct liability." Resistance at 8. Adam frames CHW's argument on the issue of direct liability as follows, "because the First Amended Complaint uses words such as 'caused' instead of 'physically,' it should be dismissed, and dismissed with prejudice." *Id*. at 9. Adam asserts that CHW's argument is:

> incorrect, and to reach [CHW's] conclusion, this [c]ourt must (1) ignore [Adam's] allegations, (2) read the allegations in the worst possible light to [Adam], (3) ignore common sense that if a [d]efendant 'called' or 'caused' communications—including communications using its name and a telephone number[] which, when called, [d]efendant's employees answer—it did not take the physical steps to make those communications, and (4) require that a plaintiff somehow be able to allege, without any benefit of discovery, the specific physical actions taken by a defendant[, then h]ow any plaintiff would be able to meet [CHW's] self-serving standard is unclear unless they were spying on the defendant while they took the physical actions.

---

[1] CHW also argues that, "[t]o the extent [Adam] is attempting to allege that CHW is vicariously liable for conduct of . . . 'third parties,' his TCPA claims still fail." CHW's Brief at 20-21. In his resistance, Adam states that, because he is alleging direct liability in the First Amended Complaint, the issue of vicarious liability is "immaterial." Resistance at 11. Accordingly, because Adam states that he is only alleging a direct liability claim and offers no argument in resistance to the issue of vicarious liability, the court need not address vicarious liability because it is not at issue in this case.

8

*Id.* at 9-10. Adam maintains that CHW's "position not only borders on the absurd, but it is also contrary to the standard under Rule 12(b)(6)" and "courts throughout the country have rejected this type of argument in the TCPA context." *Id.* at 10.

### 2. *Applicable law*

The purpose of the TCPA is "to balance 'individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade.'" *Zean v. Fairview Health Servs.*, 858 F.3d 520, 523 (8th Cir. 2017) (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014)). 47 U.S.C. § 227(b)(1)(A)(iii) "prohibits any person from making 'any call (other than a call made . . . with the prior express consent of the called party) using an automatic telephone dialing system or an artificial pre[-]recorded voice . . . to any phone number assigned to a . . . cellular telephone service.'" *Zean*, 858 F.3d at 523 (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that "a text message is a 'call' within the TCPA").

A claim under 47 U.S.C. § 227(b)(1)(A)(iii), requires a plaintiff to prove: "(1) that [the defendant] called [the plaintiff] using an automatic telephone dialing system (including predictive dialer) or artificial or pre-recorded voice, (2) that the calls were placed to [the plaintiff's] cellular telephone, (3) that the calls were not made for 'emergency purposes,' and (4) that the calls were made without [the plaintiff's] prior express consent." *Ammons v. Ally Financial, Inc.*, 305 F.Supp.3d 818, 823 (M.D. Tenn. 2018); *see also Ensz v. Chase Bank USA, N.A.*, No. 18-cv-2065-CJW-MAR, 2019 WL 136982, at *5 (N.D. Iowa Jan. 7, 2019) (same).

9

### 3.    Application

In the First Amended Complaint, Adam alleges that the November 16, 2020 text message stated: "Hey, it's Jen at Choice Home Warranty!"   First Amended Complaint ¶ 10.   Further, Adam alleges that, on February 10, 2021, he received a pre-recorded message which stated that "Choice Home Warranty was calling to offer [him] a quote." *Id*. ¶ 12.   Adam also alleges that, upon calling the number from which he received the pre-recorded messages, he heard another pre-recorded message, stating "Hi, you've reached Choice Home Warranty. . . ."   *Id*. ¶ 15.

In *Gould v. Farmers Insurance Exchange*, 288 F.Supp.3d 963 (E.D. Mo. 2018), the district court found that a plaintiff alleging that text messages stating they were from Farmers or agents "with Farmers" had "plausibly alleged that Farmers is directly liable for sending the text messages at issue." *Id*. at 969.   Similarly, in *Becker v. Pro Custom Solar, LLC*, No. 2:19-cv-535-FtM-29NPM, 2020 WL 474647, at *3 (M.D. Fla. Jan. 29, 2020), the district court found that a plaintiff alleging that text messages stating they were from the defendant's employee "plausibly alleged that [the d]efendant placed the phone calls to [the p]laintiff's cell phone." *Id*.

Here, Adam alleges that in the initial text message he received, the individual sending the text identified herself as an employee for CHW.   Adam also alleges that pre-recorded messages that he received identified the calls as coming from CHW. Therefore, accepting the factual allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of Adam, the court finds that Adam has plausibly alleged that CHW placed the calls to Adam's residential cell phone number.

Additionally, the court notes that none of the cases cited by CHW in its brief support its argument that the First Amended Complaint lacks sufficient allegations that CHW actually initiated the phone calls to Adam.   Indeed, each of the cases cited by CHW, *Sheski*, *Childress*, *Hirsch* and *Frank*, all dealt with third parties making the

10

telephone calls, which is not the case here, where Adam alleges that CHW made the calls. The other case cited by CHW, *Aaronson*, is distinguishable because, in *Aaronson*, the plaintiff made no allegations that the defendant placed the calls at issue. Accordingly, the Motion, as it relates to Adam's direct TCPA liability claim, is denied.

### C. TCPA DNC Claim

#### 1. Parties' arguments

CHW argues that Adam has "failed to plead facts supporting his TCPA DNC claims." CHW's Brief at 21. Specifically, CHW argues that, similar to the direct liability claim, Adam "does not allege any non-conclusory facts supporting an inference that CHW itself 'physically' sent the texts or placed the calls at issue or that CHW was in a common law agency relationship with a third party that did. Thus, [Adam] also failed to plead that all the at issue text/calls were 'initiated' 'by or on behalf of the same entity' as required to state a Section 227(c) claim." *Id.* (citing *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471 (N.D. Cal. Apr. 24, 2019)). CHW also argues that "various courts have recognized that the TCPA's 'internal' DNC regulations in 47 C.F.R. § 64.1200(d) were promulgated under the technical and procedural standards in Section 227(d) of the TCPA, . . . which does not give rise to a private cause of action." CHW's Brief at 22 (citing cases). Alternatively, CHW argues that, in jurisdictions where a private cause of action is recognized, "a violation of the internal DNC regulations only stems from 'the initiation of the phone call without having [first] implemented the minimum procedures' and not when an internal DNC request is not honored or for any other reason[.]" *Id.* at 22-23 (quoting *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009)). CHW maintains that Adam has failed to plead facts demonstrating such violations. CHW's Brief at 23.

In resistance to the Motion, Adam argues that the DNC claim "[is] adequately supported." Resistance at 11. Adam maintains that the First Amended Complaint

"sufficiently allege[s] that CHW directly initiated the calls." *Id*. at 12. Adam also argues that "the TCPA allows for a private right of action for 'internal' DNC violations. As recently stated by the Western District of Missouri in rejecting this argument, 'the substance of 47 C.F.R. § 64.1200(d) more directly corresponds to the substance of § 227(c) of the TCPA rather than § 227(d)." *Id*. (quoting *Hand v. Beach Entertainment KC, LLC*, 456 F.Supp.3d 1099, 1124 (W.D. Mo. 2020)). Adam also argues that the First Amended Complaint "adequately allege[s] that [CHW] had improper procedures in place," as "receiving calls after a request to stop, . . . supports the conclusion that [CHW] did not have the proper procedures in place; if [CHW] did, calls would have stopped when [Adam] requested them to." Resistance at 13 (citing *Buja v. Novation Capital, LLC*, No. 15-81002-CIV-MARRA, 2017 WL 10398957, at *5 (S.D. Fla. Mar. 31, 2017)).

### 2. Applicable law

Adam's DNC claim alleges violation of 47 C.F.R. § 64.1200(d), which provides that:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

*Id*. "Per the regulations, these internal do-not-call procedures must meet certain minimum standards, including maintaining a written policy for keeping an internal do-not-call list, training personnel engaged in telemarketing, and recording when an individual requests to be put on an entity's do-not-call list." *Hand v. Beach Entertainment KC, LLC*, 456 F.Supp.3d 1099, 1124 (W.D. Mo. 2020) (citing 47 C.F.R. § 64.1200(d)(1)-(6)).

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche*

*Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotations and alteration omitted). Under 47 U.S.C. § 227(c)(5), "[t]he TCPA provides that an individual 'who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection' may pursue a private right of action." *Hand*, 456 F.Supp.3d at 1124 (quoting 47 U.S.C. § 227(c)(5)). "Congress did not, however, explicitly or implicitly create a private right of action for regulations promulgated under section 227(d)." *Fischman v. MediaStratX, LLC*, No. 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021). 47 U.S.C. § 227(d) "directs the FCC to promulgate regulations setting the technical and procedural standards for telephone facsimile machines and artificial or pre[-]recorded voice systems and does not include a private right of action." *Hand*, 456 F.Supp.3d at 1124.

In *Fischman*, the district court points out that "[t]he FCC did not state under which subsection of 47 U.S.C. § 227 it promulgated section 64.1200(d)." 2021 WL 3559639, at *4. Thus, at issue in *Fischman* was "whether the FCC promulgated section 64.1200(d) under 47 U.S.C. § 227(c) or § 227(d) to determine if Fischman ha[d] a private right of action." *Id*. The district court notes that "several courts have held that the FCC promulgated section 1200(d) under 47 U.S.C. § 227(c) and, therefore, that plaintiffs have a private right of action for violations of section 1200(d)." *Id*. (collecting cases). The district court also points out that "[o]ther courts have held that the FCC promulgated section 64.1200(d) under 47 U.S.C. § 227(d) and, therefore, that no private right of action exists for violating section 64.1200(d). *Id*. at *5 (collecting cases). In considering this case split, the district court determined that:

> After considering these divergent views, the court agrees with those courts holding that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c). The plain text of the procedures

13

described in section 64.1200(d) corresponds with 47 U.S.C. § 227(c)'s requirements that the FCC promulgate rules to protect residential telephone subscribers' privacy rights. . . . Section 227(d)'s plain text, on the other hand, concerns standards governing "telephone facsimile machine[s]," "automatic telephone dialing system[s,]" and other automated telemarketing devices. 47 U.S.C. § 227(d). Additionally, in contrast to the text of 227(d), the text of 47 U.S.C. § 227(c) directs the FCC to . . . "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id*. § 227(c)(1)(E). Thus, the text of 47 U.S.C. §§ 227(c)(1)(E) and (d) supports the conclusion that the FCC promulgated 47 C.F.R. § 64.1200(d) under 47 U.S.C. § 227(c)(1)(E), not section 227(d).

As for the reasoning of the courts with contrary holdings, section 227(d)'s title indicates that it provides for "procedural standards," and the standards prescribed by 47 C.F.R. § 64.1200(d) are procedural. Nonetheless, "the title of a statute and the heading of a section cannot limit the plain meaning of the text. . . . Several of section 64.1200(d)'s other procedural standards, including those relevant to this case, directly relate to 47 U.S.C. § 227(c)'s plain text requiring the FCC to promulgate rules protecting residential telephone subscribers' privacy rights, indicating that the FCC also adopted those requirements in section 64.1200(d). *Compare* 47 U.S.C. § 227(c) *with* 47 C.F.R. § 64.1200(d)[.] . . . Thus, the court holds that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c).

*Id*. at *5-*6 (first and second alteration in original). Similarly, in *Rosenberg v. LoanDepot.com*, LLC, 435 F.Supp.3d 308 (D. Mass. 2020), the district court explained that:

A majority of courts that have addressed the issue (though not all), including the Sixth Circuit, have held that 47 C.F.R. § 64.1200(d)(4) was promulgated under the authority in § 227(c) and, therefore, contains a private right of action. *See Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011) (holding that the do[-]not[-]call provision, § 227(c), was implemented by § 64.1200(d)(4)); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F.Supp.3d 1187, 1200 (M.D. Tenn.

14

2017) (holding that "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations."); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F.Supp.3d 1193, 1198 (M.D. Fla. 2014).

> The [c]ourt agrees with the majority. Overall, § 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights. The principal purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object." The do-not-call provisions, including § 64.1200(d)(4), further that goal and comport with the statute. The available record indicates that § 64.1200(d) was promulgated under § 227(c) and contains a private right of action.

*Rosenberg*, 435 F.Supp.3d at 324-25; *see also Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (discussing the promulgation of § 64.1200(d) and finding a private right of action under 47 U.S.C. § 227(c)(5)); *Hand*, 456 F.3d at 1124-25 (finding that 47 C.F.R. § 64.1200(d) was promulgated under 47 U.S.C. § 227(c), creating a private right of action); *Smith v. Truman Road Development, LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *13-*14 (W.D. Mo. Apr. 28, 2020) (same).

### 3.    Application

First, for the reasons discussed above, and, accepting the factual allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of Adam, the court finds that Adam has plausibly alleged that CHW placed the calls to Adam's residential cell phone number. Second, as to the issue of whether the TCPA DNC claim gives rise to a private right of action, the court agrees with the majority of courts that hold that 47 C.F.R. § 64.1200(d) was promulgated under § 227(c) and contains a private right of action. *See Cordoba*, 942 F.3d 1259, 1265; *Hand*, 456 F.3d at 1124-25; *Rosenberg*, 435 F.Supp.3d at 324-25; *Fischman*, 2021 WL 3559639, at *4-*6; *Smith*, 2020 WL 2044730, at *13-*14. Finally, regarding the issue of whether Adam has adequately pleaded that CHW had improper procedures in place, as required for a

violation of 47 C.F.R. § 64.1200(d), the court finds that Adam has adequately pleaded such a violation.

In the First Amended Complaint, Adam alleges that, "[i]n fact, [Adam] asked [CHW] to remove himself from [CHW's] call list and stop contacting him on November 16, 2020." First Amended Complaint ¶ 19. Adam further alleges that CHW "failed to honor or abide by [Adam's] opt-out requests and continued to repeatedly call [Adam] after he asked for the messages to stop." *Id.* ¶ 21. Adam also alleges that CHW's failure to abide by Adam's opt-out requests is indicative of: (1) CHW's lack of a written policy for maintaining internal do-not-call procedures; (2) CHW's failure to institute procedures for maintaining a list of persons who request not to receive telemarketing calls; (3) CHW's failure to maintain an internal do-not-call ("DNC") list, as well as inform and train its personnel engaged in telemarketing in the existence and the use of any internal DNC list; and (4) demonstrates that CHW does not record opt-out requests or place subscribers' names and telephone number[s] on any DNC list at the time the requests are made. *Id.* ¶¶ 22-25. In *Buja*, the district court addressed a similar situation, where the plaintiff alleged that the defendants "did not have reasonable practices and procedures in place to effectively prevent telephone solicitations . . . as evidenced by its calls to [the p]laintiff who repeatedly requested [the d]efendants stop calling." 2017 WL 10398957, at *5. Based on the plaintiff's allegations, the district court determined that the "factual allegations [were] sufficient to raise a right to relief above the speculative level and state a plausible DNC claim." *Id.* (quotation omitted). Here, Adam requested that CHW stop calling him, CHW did not, and based on CHW's failure to stop calling him, Adam alleges that CHW violated the procedures required in 47 C.F.R. § 64.1200(d). Accepting the factual allegations in the First Amended Complaint as true and drawing all reasonable inferences in favor of Adam, the court finds

that Adam has adequately alleged a DNC claim. Accordingly, the Motion, as it relates to Adam's TCPA DNC claim, is denied.

### D. *Class Allegations*

#### 1. *Parties' arguments*

CHW argues that Adam's "facially uncertifiable class allegations should be stricken under Rules 12(f) and 23." CHW's Brief at 24. CHW asserts that Adam's "proposed classes are impermissibly 'fail-safe.'" *Id*. Specifically, CHW argues that "all three of [Adam's] proposed classes . . . are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims." *Id*. at 25. CHW also argues that "common questions of law and fact do not predominate." *Id*. at 26. CHW maintains that "courts routinely deny class certification in TCPA cases on predominance grounds, where, as here, individualized determinations of 'consent' or 'revocation' of consent . . . would be needed." *Id*. (citing cases). CHW contends that, "whether any calls or texts in this case were made without the consent of [Adam] and the putative class members is not a common question of law or fact that can be resolved by generalized proof across the entire class in a single adjudication; rather, it would necessitate individualized factual and legal inquiries on the critical issue of consent, at the minimum." *Id*. at 28. Finally, CHW asserts that Adam's "proposed DNC classes are impermissibly overbroad. *Id*.

In resistance to the Motion, Adam argues that the "alleged Classes are not fail-safe." Resistance at 15. Specifically, Adam argues that, "because lack of consent is not an element of a TCPA claim, the limitation of the class to consumers that did not provide consent does not render [the] class definition fail-safe." *Id*. at 16. Adam also argues that, "[w]hether someone's telephone number was registered on the DNC is not a merits issue and there is an objective way to verify whether someone has listed their number on the DNC (by searching the DNC for the number)." *Id*. In the alternative,

17

Adam argues that, "even if the class definitions are fail-safe—which [Adam] disputes— the proper remedy would be to order [Adam] to clarify the definitions." *Id*. at 16-17 (citing cases).

Adam also argues that CHW's "predominance argument is meritless and premature." *Id*. at 17. Adam points out that the First Amended Complaint "alleges that (1) [CHW] sent the texts/calls at issue; (2) [Adam] and the Class members never gave their consent to [CHW]; and (3) [CHW] refuses to honor opt-out requests. There are no individualized inquiries." *Id*. at 18. Adam maintains that the "operative pleading establishes that issues of consent do not predominate, and if there is any question on the issue, this [c]ourt should address it at the class certification stage based on the facts not [CHW's] misrepresentations of [Adam's] allegations." *Id*. at 19.

Lastly, Adam argues that the "proposed DNC Class is adequately defined." *Id*. Adam asserts that CHW "does not seek to address any actual shortcoming with [Adam's] pleading, it is attempting to use Rule 12(f) as a sword to fabricate supposed deficiencies and delay these proceedings." *Id*. at 20. In addressing CHW's argument on the proposed DNC Class, Adam notes that CHW "takes issue with the DNC class definition because it states that it is comprised of telephone numbers that have been listed on the DNC" and "because it may include individuals who do not use their numbers for residential purposes." *Id*. Adam asserts that, contrary to CHW's arguments, "under the FCC's rules, allegations that a telephone number is registered on the DNC 'creates the presumption that [the user] is a "residential subscriber" for purposes of the TCPA's do-not-call protections.'" *Id*. (quoting *Laccinole v. Appriss, Inc.*, 453 F.Supp.3d 499, 505 (D.R.I. 2020)).

### 2. *Applicable law*

Fed. R. Civ. P. 12(f) provides that a court, on its own, or, on motion made by a party, "may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." *Id.* "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). However, the Eighth Circuit Court of Appeals has stated that, "because this remedy is drastic and often is sought by the movant simply as a dilatory or harassing tactic, . . . striking a party's pleading . . . is an extreme and disfavored measure." *Donelson*, 999 F.3d at 1091-92 (quotation omitted). "But despite this, it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis." *Id.* at 1092. As it pertains to class action lawsuits, the Eighth Circuit has explained that:

> a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification. It is "sensible . . . to permit class allegations to be stricken at the pleading stage" if it is "apparent from the pleadings that the class cannot be certified" because "unsupportable class allegations bring 'impertinent' material into the pleading" and "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." [5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*] § 1383. This is consistent with Rule 23(c), which governs class-action certification, because 23(c)(1)(A) directs district courts to decide whether to certify a class "[a]t an early practicable time," and nothing in Rule 23(c) indicates that the court must await a motion by the plaintiffs.

*Donelson*, 999 F.3d at 1092 (second alteration in original).

"A fail-safe class is one that, 'would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound.'" *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020) (quoting *Orduno v. Pietrzak*, 923 F.3d 710, 716 (8th Cir. 2019)); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (providing that "a class definition is impermissible where it is a 'fail-

19

safe' class, that is, a class that cannot be defined until the case is resolved on its merits").

In *Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-cv-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020), the district court offered a thorough explanation of a fail-safe class:

> Members of a proposed class are required to be "readily identifiable." *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972). Courts prohibit "fail-safe classes" because the class members are not ascertainable. *Progressive Health and Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 245 (S.D. Ohio 2017). Fail-safe classes are proposed classes that require "a court to rule on the merits of the claim . . . in order to tell who was included in the class." *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C. 2012). They are "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 826 (7th Cir. 2012)). In other words, "a class whose members may only be identified and included after the [c]ourt determines whether or not the potential class member has a valid claim" is an improper fail-safe class." *Id.* at 289[.]

*Bryant*, 2020 WL 6876292, at *2.

### 3. Application

In *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013), the district court explained that, "[b]ecause the TCPA prohibits calls to cellular telephones using ATDS unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class"; thus, making a fail-safe class. *Id.* at *11; *see also Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 (CEJ), 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (finding a class fail-safe, stating that "the proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relation," and,

20

therefore, "the proposed class consists solely of persons who can establish that defendant violated the TCPA"). In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014), the district court found a fail-safe class and explained that:

> [T]he proposed classes consist solely of persons who can establish that defendant violated the TCPA. . . . If the [p]laintiffs successfully demonstrate[] that the [d]efendant made calls using an ATDS or an artificial or pre[-]recorded voice to the class members' cell phones without the class members' prior express consent, then the class members win. See 47 U.S.C. § 227(b)(1)(A)(iii). However, if the [p]laintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the [d]efendant. This is the definition of a prohibited fail-safe class.

*Id*. at *9 (quotation omitted); *see also Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015) (finding a class fail-safe, stating that "[p]laintiff's classes consist of those people who did not provide prior express consent to be contacted by defendants, and therefore can establish a violation of the TCPA"); *Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245-KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (finding a class fail-safe, explaining that "inclusion of the 'without prior consent' language in the national classes definition makes it a 'fail-safe' class, as clearly the issue of consent is central to determining defendant's liability"). In *Bryant*, the district court addressed classes defined to include "the lack of members' consent to receive calls" and determined that "a court is unable to establish membership of the class until the merits of each member's TCPA claim (*i.e.*, that each member did not give consent) are determined; such a class must be deemed a fail-safe class." 2020 WL 6876292, at *3.

Here, like all of the cases cited above, Adam's "No Contest/Revocation Class Pre-Recorded" Class defines its members to include individuals where "Defendant failed to

secure the called party's express written consent and/or after the called party requested to not receive[] future calls from Defendant." As discussed above, such a class definition is fail-safe because the proposed class consists solely of persons who can establish that CHW violated the TCPA. *See Bryant*, 2020 WL 6876292, at *3; *Boyer*, 306 F.R.D. at 540; *Taylor*, 2014 WL 6654270, at *22; *Sauter*, 2014 WL 1814076, at *9; *Olney*, 2013 WL 5476813, at *11; *Lindsay Transmission*, 2013 WL 275568, at *4. Therefore, the "No Contest/Revocation Class Pre-Recorded" Class is stricken. However, in virtually every case that the court has reviewed, at the pre-class certification stage of litigation, when a proposed class is stricken for being determined to be a fail-safe class, the court allows the plaintiff the opportunity to amend the class definition. *See Sauter*, 2014 WL 1814076, at *9 ("[T]he fail-safe problem . . . can and often should be solved by refining the class definition rather than by flatly denying class certification."). Accordingly, Adam will be given fourteen days to amend the "No Contest/Revocation Class Pre-Recorded" class definition.

As for classes involving DNC registries, courts are divided on whether such classes are fail-safe. In *Bryant*, the district court determined that such classes are fail-safe and explained that:

> The TCPA . . . prohibit[s] calls to any telephone number listed on the National Do Not Call Registry. 47 U.S.C. § 227(c)(2)[.] . . . When plaintiffs define their classes to include members whose telephone numbers are listed on the National Do Not Call Registry, suggesting that the members did not consent to receiving the calls, a court cannot establish membership of the classes until the merits of the TCPA . . . claim[] (that each class member's number is listed) is determined. *Cf. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015) (noting that a class definition including members who did not provide their telephone number to the defendant was "a distinction without a difference" from explicitly including lack of consent). . . .

22

This [c]ourt concludes that members of a TCPA class defined to include lack of consent, either explicitly or via the members' telephone listing on the National Do Not Call Registry, will automatically prevail on the TCPA . . . claim. Individuals who consented to the calls would be defined out of the class and not bound by a judgment. This creates an impermissible fail-safe class. . . . As noted, classes defined in this manner create a "heads I win, tails you lose" situation where class members either receive a favorable judgment or are defined out of the class.

2020 WL 6876292, at *3 (quotation omitted). However, in *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015), the district court determined that internal DNC registry and national DNC registry classes were not fail-safe. The district court explained that:

Plaintiff's class definitions are not fail-safe. Membership in both of [p]laintiff's proposed classes can be determined without reaching any legal conclusions: to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from [d]efendants within a certain timeframe. . . . None of these questions involve legal analysis. Membership can be determined by objective criteria. . . .

Furthermore, the classes would not consist of only people who would prevail on the merits: for example, National DNC Class members would not prevail if a court found that [defendants'] calls were not telephone solicitations or that [defendants] obtained prior consent before placing their calls. . . . Likewise, Company DNC Class members would not prevail if a court found that [defendants'] calls were not telephone solicitations[.] . . .

In addition, the proposed class definitions here are different from the fail-safe class definitions cited by [d]efendants because the class definitions here do not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership. . . . Unlike the cases cited by [d]efendants, [p]laintiff's class definitions do not require the court to legally conclude

23

whether a person gave "prior consent" in order to determine whether that person is in the class. . . .

*Id*. at *8.

Having considered the case law on this issue, and, given the early stage of litigation, pre-certification of the class and no prior discovery, the court is unpersuaded that Adam's "Internal DNC Class" and "DNC Class" are conclusively fail-safe classes. Similarly, at this early stage of the litigation, the court is also not persuaded that the Internal DNC or DNC classes are overbroad based on not knowing whether registered numbers are residential numbers as required by § 227(c), *see* CHW's Brief at 28-29. In *Laccinole v. Appriss, Inc.*, 453 F.Supp.3d 499, 505 (D.R.I. 2020), the district court, relying on the regulations, noted that a number registered on the national DNC registry is presumed to be a "residential subscriber" for purposes of the TCPA's do-not-call protections. *See id*. at 505. Accordingly, CHW's motion to strike Adam's Internal DNC Class and DNC Class is denied without prejudice.

### E. Remaining Issues

Without argument, CHW asserts that the First Amended Complaint should be dismissed for lack of Article III standing "because [Adam] fails to plead facts meeting the causation and redressability elements." CHW's Brief at 23. CHW bases its assertion on the alleged Rule 12(b)(6) pleading deficiencies regarding direct TCPA liability. *See id*. at 23-24. Because the court did not find any Rule 12(b)(6) deficiencies in the First Amended Complaint, CHW's standing argument lacks merit. Moreover, as explained in *Greenley v. Laborers' International Union of North America*, 271 F.Supp.3d 1128 (D. Minn. 2017), "[t]he 'vast majority of post-*Spokeo* TCPA cases have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury.'" *Id*. at 1138 (quoting *Sandusky Wellness Center, LLC v. MedTox Scientific, Inc.*, 250 F.Supp.3d 354, 357 (D. Minn. 2017)).

24

Further, "most courts find that the receipt of even one unwanted call is generally enough to clear Article III's low bar for concrete injury." *Greenley*, 271 F.Supp.3d at 1138 (quotation omitted); *see also McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F.Supp.3d 1124, 1130-31 (E.D. Ark. 2018) (providing that "statutory violations of the TCPA constitute 'concrete' injuries that confer Article III standing") (collecting cases). Based on the foregoing, the court finds that Adam has Article III standing.

## VII. CONCLUSION

In light of the foregoing, CHW's Motion to Dismiss (docket no. 25) is **DENIED** in its entirety. CHW's alternative Motion to Strike Class Allegations (docket no. 25) is **GRANTED in part** and **DENIED in part**. As it pertains to the Internal DNC Class and the DNC Class, the Motion to Strike is **DENIED WITHOUT PREJUDICE**. As it pertains to the "No Consent/Revocation Class Pre-Recorded" Class, the Motion to Strike is **GRANTED**. Adam is **DIRECTED by not later than two weeks from the filing of this Order** to file an amended class definition for the "No Consent/Revocation Class Pre-Recorded" Class that addresses the fail-safe nature of the current class definition.

**IT IS SO ORDERED**.

**DATED** this 9th day of September, 2021.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

25